EAU CLAIRE COUNTY, Plaintiff-Respondent-Petitioner,

v.

GENERAL TEAMSTERS UNION LOCAL NO. 662, Defendant-Appellant,

WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Defendant.

Supreme Court

*No. 98–3197. Oral argument May 2, 2000.—Decided June 20, 2000.*

2000 WI 57

(Also reported in 611 N.W.2d 744.)

For the plaintiff-respondent-petitioner there were briefs by *Keith R. Zehms, Mindy K. Dale*, corporation counsel, and oral argument by *Keith R. Zehms*.

For the defendant-appellant there was a brief by *Naomi E. Soldon* and *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C.*, Milwaukee, and oral argument by *Naomi E. Soldon*.

An amicus curiae brief was filed by *John J. Prentice* and *Prentice & Phillips*, Milwaukee, on behalf of the Wisconsin Counties Association.

An amicus curiae brief was filed by *Scott L. Cox*, Menomonie, on behalf of the Wisconsin Association of County Corporation Counsel.

An amicus curiae brief was filed by *Gordon E. McQuillen, Shana R. Lewis*, and *Cullen, Weston, Pines & Bach*, Madison, on behalf of the Wisconsin Professional Police Association/Law Enforcement Employment Relations Division.

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This is a review of a published decision of the court of appeals, *Eau Claire County v. General Teamsters Union Local No. 662*, 228 Wis. 2d 640, 599 N.W.2d 423 (Ct. App. 1999), reversing a judgment of the Circuit Court for Eau Claire County, Paul J. Lenz, Judge. The circuit court enjoined the Wisconsin Employment Relations Commission (WERC) from acting on a prohibited practice complaint filed by General Teamsters Union Local No. 662. The Union's complaint alleged that Eau Claire County refused to arbitrate the dismissal of Deputy Sheriff John R. Rizzo under the collective bargaining agreement between Eau Claire County and the

Union. The circuit court entered judgment dismissing the complaint, holding that Wis. Stat. § 59.52(8)(c) (1997–98)[1] establishes a circuit court as the exclusive forum in which an aggrieved county law-enforcement employe may challenge an order of a civil service commission to dismiss, demote, suspend, or suspend and demote the employe. The court of appeals reversed the judgment, concluding that Wis. Stat. § 59.52(8)(c) does not establish a circuit court as the exclusive forum in which an aggrieved county law-enforcement employe may challenge an order of a civil service commission to dismiss, demote, suspend, or suspend and demote the employe and that the collective bargaining agreement providing for arbitration of such disputes is valid and enforceable. We affirm the decision of the court of appeals.

¶ 2. The issue presented in this case is whether a county law-enforcement employe's appeal to a circuit court pursuant to Wis. Stat. § 59.52(8)(c) is the employe's exclusive appeal procedure when a civil service commission issues an order to dismiss, demote, suspend, or suspend and demote the employe. Or may the county law-enforcement employe use the grievance procedures, including arbitration, provided in the applicable collective bargaining agreement, in lieu of an appeal to a circuit court pursuant to Wis. Stat. § 59.52(8)(c)?

¶ 3. For the reasons set forth below, we conclude that the circuit court is not the exclusive forum in which a county law-enforcement employe may challenge an order of a civil service commission to dismiss,

---

[1] All subsequent references to the Wisconsin Statutes will be to the 1997–98 volumes unless otherwise specified.

The circuit court actually relied on Wis. Stat. § 59.21(8)(b)6 (1991–92), the precursor to the current § 59.52(8)(c).

demote, suspend, or suspend and demote the employe. We conclude that after a civil service commission issues an order to dismiss, demote, suspend, or suspend and demote a county law-enforcement employe, the employe may proceed either with an appeal to the circuit court pursuant to Wis. Stat. § 59.52(8)(c) or with the grievance procedures, including arbitration, provided in the applicable collective bargaining agreement. The employe may not, however, pursue both the statutory appeal procedure to the circuit court set forth in § 59.52(8)(c) and the grievance procedures set forth in the applicable collective bargaining agreement.

I

¶ 4. The parties stipulated to the relevant facts giving rise to this dispute. Eau Claire County and the Union are parties to a collective bargaining agreement negotiated pursuant to Wis. Stat. § 111.70. The collective bargaining agreement was signed on March 14, 1996, and was in effect from January 1, 1996, through December 31, 1997. The collective bargaining agreement required "just cause" for discipline, including suspension or discharge, of a deputy sheriff (a county law-enforcement employe) and provided for arbitration as the last step in the grievance procedures. Eau Claire County Deputy Sheriff John R. Rizzo, the subject of the disciplinary proceeding at issue, was covered by the collective bargaining agreement.

¶ 5. Eau Claire County has established a civil service system under Wis. Stat. § 59.52(8)(a) that addresses the tenure and status of county personnel.[2]

―――――――――――――――――――――

[2] The procedures for disciplining law-enforcement employes of counties that (unlike Eau Claire County) have not estab-

Wisconsin Stat. § 59.52(8)(b) provides that a county law-enforcement employe may not be dismissed, demoted, suspended, or suspended and demoted by a civil service commission unless the commission determines there is "just cause" to sustain the charges. The statute sets forth the standards the commission shall apply in making its determination of "just cause." The Eau Claire County Board Committee on Personnel acts as the statutory civil service commission and determines whether the sheriff has "just cause" to dismiss, demote, suspend, or suspend and demote a deputy sheriff. Relying on *City of Janesville v. WERC*, 193 Wis. 2d 492, 534 N.W.2d 34 (Ct. App. 1995), Eau Claire County advised the Union prior to the Rizzo dispute that neither the Union nor an aggrieved county law-enforcement employe could proceed to arbitration under the collective bargaining agreement after the statutory just cause proceeding under Wis. Stat. § 59.52(8)(b).

¶ 6. On October 11, 1996, the Eau Claire County sheriff notified Rizzo and the Union that the sheriff intended to recommend Rizzo's termination to the Eau Claire County Board Committee on Personnel. Rizzo had been disciplined previously on six separate occasions. The committee held a hearing at which Eau Claire County and Rizzo were represented and evidence was presented. After the hearing, the committee issued a written decision to terminate Rizzo. The committee also notified Rizzo of his right to appeal to the circuit court pursuant to Wis. Stat. § 59.52(8)(c). Rizzo did not, however, appeal to the circuit court. Instead, he filed a grievance with the sheriff and the Eau Claire County Board Committee on Personnel pursuant to the

lished civil service commissions under Wis. Stat. § 59.52(8)(a) are set forth in § 59.26(8)(b)3.

collective bargaining agreement, contesting the "just cause" determination. The sheriff denied the grievance. The Committee on Personnel never met to consider Rizzo's grievance, having already conducted a "just cause" hearing. Eau Claire County informed Rizzo that it did not consider the grievance arbitrable, contending that under Wis. Stat. § 59.52(8)(c) a county law-enforcement employe's exclusive procedure to challenge a dismissal order was an appeal to the circuit court.

¶ 7. The Union then filed a prohibited practice complaint with WERC pursuant to Wis. Stat. § 111.70(3), alleging that Eau Claire County had committed a prohibited practice by refusing to arbitrate in accordance with the collective bargaining agreement. In response, Eau Claire County filed a declaratory action in the Circuit Court for Eau Claire County, seeking to enjoin WERC from exercising jurisdiction over the Union's prohibited practice complaint. The circuit court's judgment enjoined WERC from proceeding on the complaint, holding that Rizzo's exclusive forum was the circuit court by an appeal pursuant to Wis. Stat. § 59.52(8)(c). The Union appealed, and the court of appeals concluded that the statutory appeal procedure to the circuit court set forth in Wis. Stat. § 59.52(8)(c) is not the exclusive method to review an order of a civil service commission to dismiss, demote, suspend, or suspend and demote a county law-enforcement employe. Thus the collective bargaining agreement providing arbitration as the final step in settling such disputes is valid and enforceable.

II

¶ 8. This case involves statutory interpretation and the application of Wis. Stat. § 59.52(8)(c) to undis-

puted facts. Interpretation of a statute and application of the statute to undisputed facts are questions of law that this court decides independently of the circuit court and the court of appeals, benefiting from their analyses.

¶ 9. Wisconsin Stat. § 59.52(8)(c) provides that if a civil service commission (here the Eau Claire County Board Committee on Personnel) orders a county law-enforcement employe to be dismissed, demoted, suspended, or suspended and demoted, the employe "may" appeal the order to the circuit court. The word "may" connotes, as the court of appeals observed, either that other avenues of appeal are available or that appeal to the circuit court is within the discretion of the aggrieved employe. Wis. Stat. § 59.52(8)(c) reads as follows:

> If a law enforcement employe of the county is dismissed, demoted, suspended or suspended and demoted by the civil service commission or the board under the system established under par. (a), the person dismissed, demoted, suspended or suspended and demoted may appeal from the order of the civil service commission or the board to the circuit court by serving written notice of the appeal on the secretary of the commission or the board within 10 days after the order is filed. Within 5 days after receiving written notice of the appeal, the commission or the board shall certify to the clerk of the circuit court the record of the proceedings, including all documents, testimony and minutes. The action shall then be at issue and shall have precedence over any other cause of a different nature pending in the court, which shall always be open to the trial thereof. The court shall upon application of the accused or of the board or the commission fix a date of trial which shall not be later than 15 days after

the application except by agreement. The trial shall be by the court and upon the return of the board or the commission, except that the court may require further return or the taking and return of further evidence by the board or the commission. The question to be determined by the court shall be: Upon the evidence is there just cause, as described in par. (b), to sustain the charges against the employe? No cost shall be allowed either party and the clerk's fees shall be paid by the county. If the order of the board or the commission is reversed, the accused shall be immediately reinstated and entitled to pay as though in continuous service. If the order of the board or the commission is sustained, it shall be final and conclusive.[3]

¶ 10. Nowhere in Wis. Stat. § 59.52(8)(c) does the legislature explicitly state that the statutory appeal procedure to the circuit court is the exclusive remedy available to a county law-enforcement employe to challenge an order of the Eau Claire County Board Committee on Personnel or that § 59.52(8)(c) supersedes grievance procedures, including arbitration, provided by the applicable collective bargaining agreement for settlement of such disputes.

¶ 11. The parties urge us to examine several indicia of legislative intent to determine whether the circuit court is the exclusive forum in which a county

---

[3] Chapter 59 of the Statutes was recodified by 1995 Wis. Act 201, effective September 1, 1996. Section 59.07(20) was renumbered Wis. Stat. § 59.52(8); section 59.21 was renumbered § 59.26. See 1995 Wis. Act 201 §§ 134, 273. In contrast to the collective bargaining agreement, this statute does not appear to give the sheriff an opportunity for review of a decision not to dismiss, demote, suspend, or suspend and demote a law-enforcement employe.

law-enforcement employe may challenge an order of the Committee on Personnel.

¶ 12. The first indicator, the Union argues, is that the legislature's failure to provide explicitly that the statutory appeal procedure under Wis. Stat. § 59.52(8)(c) is the exclusive appeal procedure suggests that the legislature did not intend the statutory appeal procedure to be exclusive.

¶ 13. The Union reasons as follows: County law-enforcement employes are covered by collective bargaining agreements that govern wages, hours and conditions of employment, Wis. Stat. §§ 111.70(1)(a) and 111.70(3)(a), including grievance procedures such as arbitration for discipline and termination. If the legislature had intended Wis. Stat. § 59.52(8)(c), the statutory appeal procedure, to be exclusive, the legislature would have been making a drastic change in the law and would have, in all probability, explicitly set forth such a change. But the legislature did not explicitly set forth any such change.

¶ 14. The Union further urges that in interpreting Wis. Stat. § 111.70 and § 59.52(8)(c) and the collective bargaining agreement, a court attempts to harmonize the statutory and contract provisions to the extent possible, recognizing that the declared legislative intent is to encourage voluntary settlement of disputes in municipal employment through collective bargaining.[4] *See* Wis. Stat. § 111.70(6). Moreover, "[t]he law of Wisconsin favors agreements to resolve

---

[4] *See Glendale Prof'l Policemen's Ass'n v. City of Glendale,* 83 Wis. 2d 90, 103–04, 264 N.W.2d 594 (1978). *See also Heitkemper v. Wirsing,* 194 Wis. 2d 182, 194, 533 N.W.2d 770 (1995) (citing *Glendale* and stating that a court was to harmonize the statutes and a collective bargaining agreement whenever possible).

municipal labor disputes by final and binding arbitration."[5]

¶ 15. The concept that a court should harmonize the statutes and a collective bargaining agreement finds support in the decisions in *Brown County Sheriff's Dept. v. Employees Ass'n,* 194 Wis. 2d 265, 533 N.W.2d 766 (1995), and *Heitkemper v. Wirsing,* 194 Wis. 2d 182, 533 N.W.2d 770 (1995).[6] In *Heitkemper,* the court concluded that a sheriff's powers pertaining to the re-appointment of deputy sheriffs established by Wis. Stat. § 59.21(1) and (4) (1991–92) could be limited by a collective bargaining agreement between the county and the labor union. *Heitkemper,* 194 Wis. 2d at 200–01.

¶ 16. Similarly, in *Brown County,* 94 Wis. 2d 182, the court concluded that a sheriff's power to dismiss or not reappoint a previously appointed deputy was not

[5] *Fortney v. School Dist. of West Salem,* 108 Wis. 2d 167, 172, 321 N.W.2d 225 (1982) (quoting *Oshkosh v. Union Local 796-A,* 99 Wis. 2d 95, 102–03, 299 N.W.2d 210 (1980)). *See also State v. P.G. Miron Constr. Co.,* 181 Wis. 2d 1045, 1055, 512 N.W.2d 499 (1994) ("[i]t has been the policy of the state and this court to foster arbitration as an alternative to litigation").

[6] The court of appeals and the Union point out that WERC weighed in on an analogous question more than 16 years ago. In *Dodge County,* Decision No. 21574 (WERC April 10, 1984) (see Eau Claire County's appendix at 59–79), WERC determined that it was possible to harmonize appeal procedures established in Wis. Stat. § 59.21(8)(b)6 (1981–82) and a collective bargaining agreement by treating the grievance arbitration forum as an alternative appeal forum if a circuit court appeal was not taken. WERC reasoned that enforcing the arbitration provisions did not nullify the statutory appeal procedures because those procedures still apply to nonbargaining unit employees.

statutorily protected and therefore may be subject to the collective bargaining agreement between the county and the labor union. *Brown County*, 194 Wis. 2d at 273–74. Both decisions invoke a collective bargaining agreement's arbitration provisions and harmonize those provisions with potentially conflicting statutes.

¶ 17.　We agree with the Union and the court of appeals that the legislature's failure to declare explicitly that Wis. Stat. § 59.52(8)(c) is the exclusive remedy to challenge a dismissal order demonstrates a legislative intent of non-exclusivity. The court of appeals concluded:

> A legislative intent to contravene not only the declared public policy of this state but also the long-standing traditional public policy of this entire nation must not be so readily inferred in a statute that is ambiguous as to its intent. Given such strong statements of public policy favoring arbitration, it is difficult to conceive that the legislature would enact a statute directly in contravention of this state's announced public policy without using specific explicit language to do so. Such a dramatic change in public policy should not have to be made by inference. 228 Wis. 2d at 648.

¶ 18.　The second indicator of legislative intent is the legislative history of Wis. Stat. § 59.52(8)(c). The parties dispute whether the legislative history of Wis. Stat. § 59.52(8)(c) demonstrates a legislative intent that the statutory appeal procedure is exclusive and renders null the grievance procedures in the applicable collective bargaining agreement.

¶ 19.　As initially proposed, the 1993 legislation upon which Wis. Stat. § 59.52(8) is based would have explicitly permitted a collective bargaining agreement between a Union and a county to supersede the statu-

tory procedures for dispute resolution, if the collective bargaining agreement specifically so stated.[7] Eau Claire County argues that the legislature's failure to adopt this proposal makes clear that the statutory appeal procedure to the circuit court is the exclusive remedy. The Union counters that the legislature's failure to pass this proposal is not significant because this bill would have allowed a collective bargaining agreement to supersede the statutory appeal altogether. The Union argues that this bill would have meant that a county law-enforcement employe covered by a grievance procedure in a collective bargaining agreement would not have been permitted to use the statutory appeal procedure. The legislature's failure to pass this bill, the Union claims, was an affirmation of the legislature's intent that a county law-enforcement employe have a choice in deciding whether to follow the collective bargaining agreement's grievance procedure or the statutory appeal to the circuit court.

¶ 20. Another 1993 legislative proposal that was not adopted gave county law-enforcement employes the option of appealing a civil service commission's order either to the circuit court or to an arbitrator.[8] Eau Claire County concludes that this proposal was a clear legislative recognition that without specific language, arbitration is simply not available. Judge R. Thomas Cane in dissent in the court of appeals concludes that the Union "now attempt[s] to have this court do what the legislature specifically refused to do." 228 Wis. 2d at 653.

¶ 21. This proposal, however, limited the traditional power of an arbitrator: The arbitrator would not make factual findings or decide the dispute; rather, the

---

[7] 1993 Senate Bill 66.

[8] Amendment 1 to 1993 Senate Bill 66.

arbitrator would merely review a civil service commission's decision and determine "[u]pon the evidence" whether "the action of the board or commission. . .[was] appropriate."[9] The Union urges that the defeat of this proposal is properly interpreted as the legislature's affirmation that an arbitrator should keep its traditional role in cases involving decisions made by a civil service commission under Wis. Stat. § 59.52(8)(b).

¶ 22. The last piece of legislative history relevant to the present case is a bill introduced in 1998 that would have authorized county law-enforcement employes and municipal police and fire employes subject to collective bargaining agreements to utilize the grievance procedures in the collective bargaining agreements in place of the statutory appeal procedure to the circuit court in Wis. Stat. §§ 59.52(8)(c) and 62.13(5)(i).[10] The bill also would have provided that county law-enforcement employes could not use both the statutory appeal procedure and the grievance procedures in the collective bargaining agreement. The 1998 bill was not adopted. Eau Claire County argues, once again, that the legislature's refusal to enact the bill demonstrates that the legislature intended the statutory appeal procedure under Wis. Stat. § 59.52(8)(c) to be exclusive.

¶ 23. We do not draw the same inference as does Eau Claire County from the legislature's failure to enact the 1998 bill. The legislature may have refused to enact this bill for several reasons, not merely the one Eau Claire County espouses. For example, the 1998 bill governed not only county law-enforcement employes under Wis. Stat. § 59.52(8) but also municipal fire and police employes under § 62.13(5). Under § 62.13(5) the

---

[9] *See* Amendment 1 to 1993 Senate Bill 66 at § 3.
[10] 1997 Assembly Bill 944.

statutory appeal procedure for municipal fire and police employes is the exclusive procedure and supersedes the terms of the collective bargaining agreement.[11] The 1998 bill would thus have changed the appeal procedure for municipal fire and police employes. The legislature may have rejected the 1998 bill because the legislature did not want to change § 62.13(5).

¶ 24. The parties draw different conclusions from the legislative history of Wis. Stat. § 59.52(8)(c) and make good arguments to support their respective positions. We conclude, however, that the legislative history of rejected bills does not provide decisive evidence to support either party's view of legislative intent about the exclusivity of the statutory appeal procedure set forth in Wis. Stat. § 59.52(8)(c).[12] The

[11] *See City of Janesville v. WERC*, 193 Wis. 2d 492, 533 N.W.2d 34 (Ct. App. 1995).

[12] It is not clear what impact a legislature's failure to enact an amendment or subsequent law should have on the interpretation of statutes. One commentator argues that a court "must exercise great caution in drawing inferences of legislative intent from the circumstance that amendments had been accepted or rejected" during the legislative process. Norman J. Singer, 2A *Statutes and Statutory Construction*, § 48A:18 at 861, 876, 878 (6th ed. 2000). As Justice Oliver Wendell Holmes wrote: "It is a delicate business to base speculations about the purposes or construction of a statute on the vicissitudes of its passage." *Pine Hill Coal Co. v. United States*, 259 U.S. 191, 196 (1922).

Several Wisconsin cases hold that a legislature's failure to adopt a bill does not necessarily indicate that a statute should be interpreted in a certain way. *See, e.g., City of Madison v. Hyland, Hall, & Co.*, 73 Wis. 2d 364, 372, 243 N.W.2d 422 (legislature's failure to pass bills specifically permitting a county to sue for treble damages in antitrust actions was not determinative of whether a county had such a right). But *see*

legislative history is thus not determinative of the legislative intent regarding the exclusivity of the statutory appeal procedure.

¶ 25. The third indicator of legislative intent is that in 1993[13] the legislature adopted similar discipline provisions for both municipal fire and police employes and county law-enforcement employes. Eau Claire County maintains that the 1993 legislation demonstrates that the legislature intended that county law-enforcement employes and municipal police and fire employes be treated in the same manner. Because the statutory appeal procedure for municipal fire and police employes is the exclusive appeal procedure,[14] Eau Claire County asserts that the statutory appeal procedure for county law-enforcement employes also should be the exclusive appeal procedure.

¶ 26. Eau Claire County reasons as follows: Before 1993 Eau Claire County's disciplinary procedures for county law-enforcement employes were governed only by the grievance procedures established in the county's collective bargaining agreement with the Union. In 1993 the legislature authorized counties to establish civil service commissions to provide county law-enforcement employes with "just cause" procedures before discipline.[15] The 1993 law provided substantially similar "just cause" procedures for county law-enforcement employes and for municipal fire and police employes. *See* 1993 Wis. Act 53.

---

*also Cook v. Industrial Comm'n,* 31 Wis. 2d 232, 243, 142 N.W.2d 827 (1966) (failure to pass bills allowing unemployment benefits to those out of work during a strike indicated legislative intent that the alternative interpretation governs).

[13] 1993 Wis. Act 53.

[14] *See City of Janesville,* 193 Wis. 2d 492.

[15] 1993 Wis. Act 53.

¶ 27. Eau Claire County explains that in *City of Janesville v. WERC*, 193 Wis. 2d 492, 535 N.W.2d 34 (Ct. App 1995), the court of appeals held that the statutory appeals procedure in Wis. Stat. § 62.13(5) (1991–92) was the exclusive procedure to challenge the Police and Fire Commission's disciplinary order and that the collective bargaining agreement could not alter the statutory appeals procedure. The court of appeals reasoned that because the Police and Fire Commission was the exclusive body to conduct a "just cause" hearing under § 62.13(5) and only that decision was subject to court review, allowing arbitration would render the "just cause" procedure meaningless. *Janesville*, 193 Wis. 2d at 504–05. The court of appeals concluded in *Janesville* that when an irreconcilable difference exists between a statutory procedure and the arbitration provisions of a collective bargaining agreement, the statute controls.

¶ 28. Eau Claire County argues, and Judge Cane agrees in his dissent in the court of appeals, that the *Janesville* case controls the present case because Wis. Stat. §§ 59.52(8)(c) and 62.13(5), which are similar, should be construed similarly.[16] Eau Claire County

---

[16] Eau Claire County argues that ch. 59 and ch. 62 of the statutes have been interpreted similarly in other cases. In *Hussey v. Outagamie County*, 201 Wis. 2d 14, 548 N.W.2d 848 (Ct. App. 1996), a deputy sheriff was discharged in his first year of employment during his probationary period because of poor performance. The court of appeals applied the reasoning of *Kaiser v. Police & Fire Comm'rs*, 104 Wis. 2d 498, 311 N.W.2d 646 (1981), a case involving a municipal police officer, and held that the deputy sheriff, like the probationary police officer, could be discharged without following the statutory procedures. *Hussey*, 201 Wis. 2d at 18–21. Similarly, in *In re Discipline of Bier*, 220 Wis. 2d 175, 582 N.W.2d 748 (Ct. App. 1998), involving a deputy

asserts that had the legislature disagreed with the decision reached in *Janesville,* it could have changed the statute in 1995 when it adopted amendments to these statutes.[17] The legislature did not make any such change.

¶ 29. We are not persuaded that the *Janesville* case is dispositive of the issue we confront today. The *Janesville* case interpreted Wis. Stat. § 62.13(5) (1991–92), not § 59.52(8). Although Eau Claire County emphasizes the similarities between Wis. Stat. §§ 62.13(5) and 59.52(8)(c), and there are similarities, the differences between the two statutes must be examined.

██

¶ 30. The most important distinction, as noted by the court of appeals in this case, 228 Wis. 2d at 650, is that there are "fundamental differences between the 'bodies' responsible for making disciplinary determinations" under the two statutes, as well as differences in the procedural protections granted to the employes under each statute.

¶ 31. A Police and Fire Commission, established under Wis. Stat. § 62.13(1), is composed of five members appointed by a mayor and hears disputes regarding the discipline of municipal fire and police employes under Wis. Stat. § 62.13(5).

¶ 32. Wisconsin Stat. § 59.52(8) does not establish guidelines for creating county civil service

---

sheriff, the court of appeals looked for guidance to *Jendrzjoyewski v. Board of Police and Fire Comm'rs,* 257 Wis. 536, 44 N.W.2d 270 (1950), a case involving a municipal police officer.

[17] 1995 Wis. Act 201, adopted on April 4, 1996, renumbered Wis. Stat. § 59.07(20) as § 59.52(8) and § 59.21 was renumbered § 59.26. There were no relevant substantive changes to these statutes.

commissions. In this case, for example, the Eau Claire County Board Committee on Personnel, which made the decision to terminate Deputy Sheriff Rizzo, was composed of several Eau Claire County Board members who were designated as the Committee on Personnel. Eau Claire County argues that the Eau Claire County Board Committee on Personnel is no more political or biased than a Police and Fire Commission created under Wis. Stat. § 62.13. Eau Claire County notes that Eau Claire County Board supervisors are all elected on a nonpartisan basis and the Committee on Personnel does not act as the agent of the sheriff or the Eau Claire County Board.

¶ 33. The Union argues, however, that because the Eau Claire County Board Committee on Personnel is composed of county board members, it is potentially biased. The Eau Claire County Board appears to have an interest in the dispute and is at the same time the decision-maker under the statute. The Union claims that this potential for bias justifies permitting a fresh look at the dispute by an arbitrator.

¶ 34. We agree with the Union. Under Wis. Stat. § 59.52(8)(a), the Eau Claire County Board could have designated itself as the civil service commission. Therefore the County Board could have decided under Wis. Stat. § 59.52(8)(b) whether "just cause" exists to dismiss Deputy Sheriff Rizzo. The Eau Claire County Board thus is a party to the collective bargaining agreement, it is the entity against which the grievance is filed, and it also decides the grievance.[18]

---

[18] Furthermore, counsel for Eau Claire County conceded that nothing in the statute prevented him, as counsel for Eau Claire County, to meet with the Committee on Personnel regarding the disciplinary hearing. However, counsel indicated that he would be prevented from doing so by the attorneys' Code

¶ 35. In light of the difference in the decision-making bodies under §§ 62.13(5) and 59.52(8)(c), the legislature may very well have decided that a county law-enforcement employe should be given the choice of having a circuit court review the existence of "just cause" on the paper record made by the civil service commission or having a disinterested arbitrator make a decision after hearing the facts.

¶ 36. Furthermore, the procedures for deciding the dispute are different under Wis. Stat. §§ 62.13(5)(d) and 59.52(8)(b). Section 62.13(5)(d) requires a Police and Fire Commission to hold a hearing at which a municipal fire or police employe has the right to be represented by an attorney and to compel the attendance of witnesses.

¶ 37. Section 59.52(8)(b) merely states that a county law-enforcement employe may not be dismissed, demoted, suspended, or suspended and demoted, unless "the commission or the [county] board determines whether there is just cause. . .to sustain the charges." Section 59.52(8)(b) does not explicitly require that a hearing be held or that the county law-enforcement employe may be represented at a hearing by an attorney and may call witnesses.[19]

¶ 38. In light of these procedural differences in §§ 62.13(5)(d) and 59.52(8)(b), the legislature may very well have decided that a county law-enforcement employe should be given the choice of having a circuit court review the existence of "just cause" on the paper

of Professional Conduct. We mention this issue merely to demonstrate the potential for conflict of interest in the statutory procedure.

[19] Eau Claire County points out that a full hearing was conducted in the disciplinary proceedings against Rizzo, including sworn testimony and exhibits.

record made by the civil service commission or having a disinterested arbitrator make a decision after hearing the facts.

¶ 39. Because of these differences between Wis. Stat. §§ 62.13(5) and 59.52(8)(c), we conclude that the *Janesville* case does not govern the present case. The differences in the statutes governing municipal and county employes support the conclusion that the legislature did not intend the exclusive statutory appeals procedure for municipal fire and police employes to be applied to county law-enforcement employes.

¶ 40. The fourth and final indicator of legislative intent regarding the exclusivity of the statutory appeal procedure is that the legislature did not intend to allow a county law-enforcement employe to get the proverbial "two bites at the apple." Eau Claire County argues that the legislature could not have intended to waste resources by giving county law-enforcement employes a hearing before the Committee on Personnel and a new fact-finding process by an arbitrator. As we stated previously, the legislature might have concluded that a new fact-finding process should be available when the statute does not mandate a hearing before a neutral body.

¶ 41. Eau Claire County also argues that allowing an employe "two bites" is inconsistent with *Milas v. Labor Ass'n of Wis., Inc.*, 214 Wis. 2d 1, 571 N.W.2d 656 (1997).[20] But the present case offers a dif-

---

[20] In *Milas v. Labor Ass'n*, 214 Wis. 2d 1, 571 N.W.2d 656 (1997), this court accepted certification to determine whether the statutory appeal procedure to the circuit court created by Wis. Stat. § 59.21(8)(b)6 (1991–92) was the exclusive remedy following an adverse decision or whether an employe could pursue a grievance procedure pursuant to the applicable collective bargaining agreement. The court did not reach that issue.

ferent scenario than that in *Milas*. In *Milas* the county agreed to arbitration under the county's collective bargaining agreement. Then, when the county lost in arbitration, it argued that the arbitration had been an illegal procedure. In this case Rizzo does not seek two different reviews of the decision of the Committee on Personnel. Rather, after the Committee's decision to terminate his employment, Rizzo wanted to choose between the circuit court and an arbitrator. He did not seek to litigate both before the circuit court and the arbitrator.

¶ 42. For the reasons set forth, we conclude that a circuit court is not the exclusive forum in which a county law-enforcement employe may challenge an order of a civil service commission to dismiss, demote, suspend, or suspend and demote the employe under Wis. Stat. § 59.52(8)(c). We conclude that after a civil service commission issues an order to dismiss, demote, suspend, or suspend and demote a county law-enforcement employe, the employe may proceed either with an appeal to the circuit court pursuant to Wis. Stat. § 59.52(8)(c) or with the grievance procedures, including arbitration, provided in the applicable collective bargaining agreement. The employe may not, however, pursue both the statutory appeal procedure to the circuit court set forth in § 59.52(8)(c) and the grievance procedures set forth in the applicable collective bargaining agreement.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 43. DIANE S. SYKES, J. *(dissenting)*. I respectfully dissent. For the reasons more fully stated by

Judge Cane in his dissent in the court of appeals, I conclude that *City of Janesville v. WERC*, 193 Wis. 2d 492, 535 N.W.2d 34 (Ct. App. 1995), controls this case, and cannot be distinguished. *Eau Claire County v. General Teamsters Union Local No. 662*, 228 Wis. 2d 640, 651–52, 654–56, 599 N.W.2d 423 (Ct. App. 1999).

¶ 44. The statute at issue in *City of Janesville*, Wis. Stat. § 62.13(5), which governs reviews of disciplinary actions against municipal police and fire personnel, was enacted together with the statute at issue in this case, Wis. Stat. § 59.52(8), which governs reviews of disciplinary actions against county law enforcement personnel. 1993 Wis. Act 53. As Judge Cane noted, the procedures are nearly identical, "parallel[ing] each other almost word for word." *Eau Claire County*, 228 Wis. 2d at 652. *City of Janesville* held that Wis. Stat. § 62.13(5) provides the *exclusive* method for obtaining review of municipal police and fire personnel disciplinary decisions, superseding any irreconcilable collective bargaining agreement provisions, specifically, arbitration. *City of Janesville*, 193 Wis. 2d at 509–11.

¶ 45. The majority does not overrule *City of Janesville*, but, rather, distinguishes it on the basis of certain procedural differences between the two statutory schemes, differences which, like Judge Cane, I find too minor to "justify a conclusion that the legislature must have intended to allow arbitration after the required statutory just cause hearing. . . ." *Eau Claire County*, 228 Wis. 2d at 656. When statutes are enacted together and concern the same subject matter, they are considered *in pari materia* and are construed together and harmonized. *State v. Wachsmuth*, 73 Wis. 2d 318, 325, 243 N.W.2d 410 (1976). Accordingly, and for the

reasons more fully stated by Judge Cane in the court of appeals, *id.* at 654–56, I respectfully dissent.

¶ 46. I am authorized to state that Justice DAVID T. PROSSER joins this dissent.